970 So.2d 414 (2007)
Eli Enrique VALDES, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D05-2153.
District Court of Appeal of Florida, Third District.
November 14, 2007.
*416 Bennett H. Brummer, Public Defender, and Maria E. Lauredo, Assistant Public Defender, for appellant.
Bill McCollum, Attorney General, and Jill Kramer Traina, Assistant Attorney General, for appellee.
Before GERSTEN, C.J., and SHEPHERD and ROTHENBERG, JJ.
ROTHENBERG, Judge.
The defendant, Eli Enrique Valdes, appeals the judgment of conviction and sentence imposed after a jury finding of guilt for three counts of attempted second degree murder with a firearm; one count of discharging a firearm from a vehicle in violation of section 790.15(2), Florida Statutes (2003); and one count of shooting into an occupied vehicle in violation of section 790.19, Florida Statutes (2003). The defendant claims that: (1) that his convictions for attempted second degree murder must be reversed due to the trial court's failure to give a particular jury instruction; (2) dual convictions, arising under one criminal episode, for the offenses of shooting into an occupied vehicle and shooting from a vehicle, violate double jeopardy; and (3) the habitual violent felony offender sentences imposed for the three counts of attempted second degree murder must be stricken because the Prison Releasee Reoffender Act does not permit equal concurrent sentences as both an habitual violent felony offender and a prison releasee reoffender. While we find no merit regarding the defendant's first two claims, we do with his third claim. We, therefore, affirm the defendant's convictions and remand with instructions to the trial court to strike the concurrent thirty-year habitual violent felony offender sentences.
The facts are as follows: Natalie Gianella, Rocio Rodriguez, and a minor, A.R., were traveling in Rodriguez's vehicle when the defendant pulled alongside the vehicle, argued with Gianella, and fired four shots at the occupants of the vehicle, striking Gianella twice.

The Defendant's Jury Instruction Claim
During the charge conference, defense counsel requested that the jury be instructed as to the available lesser-included offenses, and specifically requested that as to the attempted second degree murder charges, the jury be instructed on the lesser-included offenses of aggravated battery and attempted voluntary manslaughter. Attempted voluntary manslaughter is a necessarily lesser-included offense of attempted second degree murder, and that instruction was given. Aggravated battery is a category II, permissive lesser-included offense of attempted second degree murder. This instruction was not given as the statutory elements of aggravated battery were not alleged in the information. The defendant concedes that the failure to instruct the jury as to aggravated battery, as a lesser-included offense of attempted second degree murder, was not error.
The defendant, however, claims that the trial court erred in failing to instruct the jury as to attempted aggravated battery, *417 as a lesser-included offense of attempted second degree murder. We disagree.
Attempted aggravated battery is a permissive lesser-included offense of attempted second degree murder, not a necessarily lesser-included offense of attempted second degree murder. Therefore, the trial court was not required to provide that instruction to the jury unless the instruction was properly requested, the information alleged all of the statutory elements of the permissive lesser-included offense, and the evidence adduced at trial established all of these elements. See Jones v. State, 666 So.2d 960, 963 (Fla. 3d DCA 1996). Because the defendant did not request that this instruction be given, the trial court did not err in failing to give it. Furthermore, because defense counsel neither requested that an attempted aggravated battery instruction be given, nor objected when the instruction was not provided to the jury, the failure to provide the instruction to the jury was not preserved for appellate review.

The Defendant's Double Jeopardy Claim
The defendant raises a double jeopardy claim for the first time on appeal. Although the defendant failed to raise the issue below, a double jeopardy violation constitutes fundamental error, see State v. Johnson, 483 So.2d 420, 421 (Fla.1986), and a claim of fundamental error may be raised for the first time on direct appeal. See Sanford v. Rubin, 237 So.2d 134, 137 (Fla.1970); Corvo v. State, 916 So.2d 44, 46 (Fla. 3d DCA 2005); Barfield v. State, 871 So.2d 929, 930-31 (Fla. 5th DCA 2004). We, therefore, address the merits of the defendant's claim.
The defendant claims that his convictions for shooting from a vehicle in violation of section 790.15(2), Florida Statutes (2003), and shooting into an occupied vehicle in violation of section 790.19, Florida Statutes (2003), violate double jeopardy, as the offenses arose out of the same criminal episode. We disagree.
Section 790.15, Florida Statutes (2003), provides, in pertinent part, as follows:
790.15 Discharging firearm in public. 
(1) Except as provided in subsection (2) or subsection (3), any person who knowingly discharges a firearm in any public place or on the right-of-way of any paved public road, highway, or street or whosoever knowingly discharges any firearm over the right-of-way of any paved public road, highway, or street or over any occupied premises is guilty of a misdemeanor of the first degree. . . .
(2) Any occupant of any vehicle who knowingly and willfully discharges any firearm from the vehicle within 1,000 feet of any person commits a felony of the second degree. . . .
The defendant was convicted under section 790.15(2) of this statute. Section 790.19, Florida Statutes (2003), provides, in pertinent part, as follows:
790.19 Shooting into or throwing deadly missiles into dwellings, public or private buildings, occupied or not occupied; vessels, aircraft, buses, railroad cars, streetcars, or other vehicles.Whoever, wantonly or maliciously, shoots at, within, or into, or throws any missile or hurls or projects a stone or other hard substance which would produce death or great bodily harm, at, within, or in any public or private building, occupied or unoccupied, or public or private bus or any train, locomotive, railway car, caboose, cable railway car, street railway car, monorail car, or vehicle of any kind which is being used or *418 occupied by any person, or any boat, vessel, ship, or barge lying in or plying the waters of this state, or aircraft flying through the airspace of this state shall be guilty of a felony of the second degree. . . .
The Fifth Amendment to the United States Constitution and Article I, Section 9, of the Florida Constitution, protect criminal defendants from multiple convictions and punishments for the same offense. See U.S. Const. Amend. V; Art. I, § 9, Fla. Const. "[A]bsent a clear statement of legislative intent, the test of whether multiple convictions for an act or acts committed during a single episode constitute double jeopardy is governed by Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)." State v. Florida, 894 So.2d 941, 945 (Fla.2005). "Under Blockburger, dual convictions are authorized only if each offense contains an element that the other does not." Florida, 894 So.2d at 945. The Blockburger test has been codified in section 775.021(4), Florida Statutes (2003), which provides as follows:
(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.
(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:
1. Offenses which require identical elements of proof.
2. Offenses which are degrees of the same offense as provided by statute.
3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.
In applying section 775.021, the court must first determine whether under subsection (4)(a) and Blockburger, the offenses require proof of identical elements. If they do, double jeopardy bars the defendant's convictions for both offenses. Next, if the offenses do not have identical elements, the court must determine whether any of the three statutory exceptions contained in subsection (4)(b) apply. If any of the exceptions apply, double jeopardy bars convictions for both offenses. Florida, 894 So.2d at 945.
It is clear, and defense counsel concedes, that under the Blockburger test, as codified in section 775.021(4)(a), section 790.15(2), discharging a firearm from a vehicle within 1,000 feet of any person, and section 790.19, shooting or throwing a deadly missile at, within, or into any building, vehicle, aircraft or vessel, each contain an element distinct from the other. Section 790.15(2) requires the willful discharge of a firearm from a vehicle within 1,000 feet of a person. Section 790.19 requires not mere willfulness, but malice, and does not require that any person be within the structure or near the structure at the time. Therefore, separate convictions are authorized unless these offenses fall within one of the exceptions in subsection (4)(b). Subsection (4)(b)(1), which concerns offenses that "require identical elements of proof," does not apply here. As previously discussed, pursuant to section 790.15(2), the State was required to prove that Valdes *419 fired the weapon from a vehicle within 1,000 feet of another person. Pursuant to section 790.19, the State was required to prove that when Valdes discharged the firearm, he did so with malice, and that he fired at, within, or into a building or vehicle. Thus, the first exception under subsection (4)(b)(1) does not apply, and it does not appear that Valdes argues otherwise.
Likewise, it is clear that the third exception under subsection (4)(b)(3) does not apply, as neither offense is a lesser-included offense of the other. See Florida, 894 So.2d at 948 (specifically noting that subsection (4)(b)(3) applies only to necessarily lesser-included offenses listed in category 1 of the Schedule of Lesser Included Offenses); see also State v. McCloud, 577 So.2d 939, 941 (Fla.1991); Aiken v. State, 742 So.2d 811, 812 (Fla. 2d DCA 1999).
The defendant's double jeopardy argument is, therefore, based upon the second exception found in subsection (4)(b)(2), that the offenses "are degrees of the same offense." The defendant claims that dual convictions for both shooting offenses violate double jeopardy as they are both degree variants of the same core offense. Offenses are considered degree variants of the same core offense where both crimes intend to punish the "same primary evil." State v. Paul, 934 So.2d 1167, 1175 (Fla.2006).
In Florida, the Florida Supreme Court noted that "[t]he terms `core offense' and `degree variant' entered this Court's lexicon in Sirmons v. State, 634 So.2d 153, 154 (Fla.1994)," wherein the court held that dual convictions for armed robbery and grand theft automobile violated double jeopardy because "these offenses are merely degree variants of the core offense of theft." Florida, 894 So.2d at 948 (quoting Sirmons, 634 So.2d at 154).
Valdes does not assert what core offense these statutes allegedly share or what the evil is that these statutes seek to punish. The Fifth District Court of Appeal suggests that the primary evil "is the endangerment of the safety of those who may be struck by the discharge from the firearm," Lopez-Vazquez v. State, 931 So.2d 231, 235 (Fla. 5th DCA 2006), and that both of these offenses share the same evil. Id. The Fifth District also concludes that these two offenses share the same core offense of battery. Id. Thus, the Fifth District concluded that convictions for both offenses violate double jeopardy principles. We disagree.
We begin first with the conclusion that these two offenses share the same core offense of battery. The Fifth District's opinion in Lopez-Vazquez provides us with no insight as to the basis for reaching that conclusion, other than to quote from Justice Kogan's observation in his concurring opinion in Sirmons, that "theft, battery, possession of contraband and homicide are the type of core offenses upon which other criminal charges are based" and that "attempted first-degree murder punishes the intent to kill, whereas aggravated battery causing great bodily harm punishes the act of seriously injuring another person." Lopez-Vazquez, 931 So.2d at 234 (quoting Sirmons, 634 So.2d at 155 (Kogan, J., concurring)). The Fifth District concluded that these shooting offenses exclude lethal potential and, therefore, "must lie outside the core offense of homicide." Lopez-Vazquez, 931 So.2d at 235. Thus, it appears that the Fifth District concluded, apparently by the process of elimination, that the core offense for each shooting offense could not be homicide, and therefore, it must be battery. The Florida Supreme Court, however, rejected that argument in Gordon v. State, 780 So.2d 17, 23-24 (Fla.2001).
In Gordon, the Florida Supreme Court, in noting Justice Kogan's comments in Sirmons, *420 concluded that such a broad reading of Sirmons "would render section 775.021 a nullity" due to the limited number of "core" crimes. Gordon, 780 So.2d at 23. Specifically, the Court stated:
Justice Kogan, in his Sirmons concurrence, continued with the core offenses analysis, in essence, opining that theft, battery, possession of contraband and homicide are the type of core offenses upon which other criminal charges are based. . . . Extended to its logical extreme, a broad reading of Sirmons and the second statutory exception would render section 775.021 a nullity. Indeed, the plethora of criminal offenses is undoubtedly derived from a limited number of "core" crimes. In no uncertain terms, the Legislature specifically expressed its intent that criminal defendants should be convicted and sentenced for every crime committed during the course of one criminal episode. See § 775.021(4)(b).
Id. (citation omitted).
Section 775.021 was amended in 1989. Prior to the amendment of section 775.021, the courts of this state employed several rules of construction, including the rule of lenity in determining whether convictions for certain offenses committed in the same criminal episode constituted double jeopardy. The courts commonly looked for clear statements of legislative intent within the criminal statutes to punish the crimes separately. See Carawan v. State, 515 So.2d 161 (Fla.1987); State v. Boivin, 487 So.2d 1037, 1038 (Fla.1986).
In the subsequent amendment to section 775.021, however, the Legislature explicitly articulated its intent and, therefore, changed the analysis and effectively overruled Carawan. See State v. Smith, 547 So.2d 613, 614-17 (Fla.1989); see also Gordon, 780 So.2d at 23 ("[W]e now know the legislative intent. The subsequent amendment to section 775.021 explicitly states, `The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity . . . to determine legislative intent.' § 775.021(4)(b), Fla. Stat. (1997).") (omission in original).
A thorough examination of sections 790.15 and 790.19 reveals completely different core offenses intending to punish different evils. The core offense of section 790.15 is the discharge of a firearm in public. The statute punishes the willful discharge of a firearm in any public place and increases the penalty if the offender discharges the firearm while in a vehicle within 1,000 feet of another person. The core offense cannot be a battery, as the Fifth District suggests in Lopez-Vazquez, as there is no requirement that the discharge of the firearm result in an injury or that someone be struck by a projectile. In Florida, the Florida Supreme Court found that convictions for attempted second degree murder and aggravated battery did not constitute double jeopardy as the crime of attempted second degree murder does not require victim contact, whereas, aggravated battery does. Florida, 894 So.2d at 949. The court concluded that the primary evil of aggravated battery is the intentional, nonconsensual touching or striking, whereas the primary evil of attempted second degree murder is the potential of the act to cause death. Id. Likewise, discharging a firearm in public does not require victim contact. The core offense, therefore, is the discharge of the firearm into the public domain, not battery, and the primary evil is the potential for someone in the public domain to be injured or killed without any malice or intent to inflict bodily harm.
In contrast, the core offense of section 790.19 is the shooting or throwing of any *421 deadly missile into or at a building or vehicle with malice. Where section 790.15 punishes firing a gun into the air with no evil intent and seeks to prevent even innocent revelers celebrating the new year from discharging a gun in public, section 790.19 punishes those who fire or hurl deadly objects at or into buildings and vehicles with the intent to cause fear or to inflict injury to a person. What the Legislature is attempting to protect in enacting section 790.19 is the safety and peace of mind of people in this state within their homes, vehicles, and other buildings. The evil that section 790.19 punishes is not thoughtless or otherwise innocent conduct, but malicious acts which destroy our sense of safety within structures and vehicles. Thus, throwing a rock from an overpass at a passing vehicle carries the same penalty as shooting a firearm into a house, building, or vehicle under section 790.19. Section 790.15 elevates the crime of discharging a firearm in public from a first degree misdemeanor to a second degree felony if, when the offender discharges the firearm, he does so from a vehicle within 1,000 feet of another person. On the other hand, a violation of section 790.19 is a second degree felony, even if no person is within the structure or vehicle when the object is thrown at or into the structure or vehicle at the time, because it is not just the potential to cause injury that section 790.19 addresses, but the evil intent.
In Gordon, the Florida Supreme Court found no double jeopardy violation for convictions of attempted first degree murder, aggravated battery, and felony causing bodily injury. The court rejected Gordon's argument that these offenses share the same core offense of injuring someone. Gordon, 780 So.2d at 23. The court reasoned that attempted first degree murder punishes the intent to kill, whereas aggravated battery causing great bodily harm punishes the act of seriously injuring another person, and felony causing bodily injury punishes the act of injuring someone during the commission of a felony. Thus, the Florida Supreme Court concluded that "the separate evils of intending to kill, seriously injuring someone, and injuring someone during the commission of a felony are sufficiently distinct that they warrant separate punishment." Id.
No double jeopardy exists in the instant case because section 790.15 punishes the discharge of a firearm in public, whereas section 790.19 punishes the intent to injure or to cause fear. Moreover, section 790.15 protects people outside in public places, whereas section 790.19 protects people in their homes, vehicles, or other structures.[1]

THE SENTENCING ISSUE
We agree, and the State properly concedes, that the equal concurrent thirty-year sentences as both an habitual violent felony offender and as a prison releasee *422 reoffender, was error. See Bloodworth v. State, 790 So.2d 1032, 1033 (Fla.2001) ("The imposition of sentences under both the [Prison Releasee Reoffender] Act and the habitual violent felony offender statute does not violate principles of double jeopardy, but the imposition of equal concurrent sentences here violates the Act itself."); Martin v. State, 813 So.2d 1036, 1036 (Fla. 3d DCA 2002) (holding that the imposition of "equal concurrent sentences of imprisonment under both the Habitual Felony Offender Statute and the Prison Release[e] Reoffender Act" was error) (citing Grant v. State, 770 So.2d 655 (Fla. 2000)). We, therefore, remand to the trial court to strike the habitual violent felony offender sentences. As the correction of the defendant's sentence is clerical, not substantive, the defendant need not be present.
In light of this opinion, we certify direct conflict with the Fifth District Court of Appeal's decision in Lopez-Vazquez.
Affirmed in part; remanded with instructions; conflict certified.
NOTES
[1] We specifically recognize our decision in Wilcher v. State, 524 So.2d 1105 (Fla. 3d DCA 1988). Wilcher was decided prior to the amendment of section 775.021(4), and specifically relied upon Carawan. As previously noted in this opinion, the Florida Supreme Court has stated that, by amending section 775.021(4), the Legislature has effectively overruled Carawan. See Gordon, 780 So.2d at 24 (stating "we have noted repeatedly that the Legislature effectively overruled Carawan"); see also State v. Johnson, 601 So.2d 219, 221 (Fla.1992) ("The purpose of Chapter 88-131 was to overrule our opinion in Carawan. As amended, section 775.021(4) makes it clear that a defendant may be convicted of two or more criminal offenses arising out of the same transaction as long as each criminal offense contains at least one separate element."); State v. Smith, 547 So.2d 613, 615-17 (Fla.1989). We, therefore, note that, because the Florida Legislature amended section 775.021(4), and Carawan no longer has validity, Wilcher, which was decided prior to the amendment of the statute and which relied upon Carawan, also has no validity.